IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WANDA HALL, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Civil Action No. 3:10-CV-1675-BK |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

# MEMORANDUM OPINION

Pursuant to the parties' consent to proceed before the magistrate judge (Doc. 17), this case has been transferred to the undersigned for final ruling. For the reasons discussed herein, the Plaintiff's *Motion for Summary Judgment* (Doc. 25) is **GRANTED**, and the Defendant's *Motion for Summary Judgment* (Doc. 26) is **DENIED**.

**I.   BACKGROUND**[1]

**A.   Procedural History**

Wanda Hall (Plaintiff) seeks judicial review of a final decision by the Commissioner of Social Security (Commissioner) denying her claim for Disability Insurance Benefits (DIB) under the Social Security Act. In November 2005, Plaintiff protectively filed for DIB, claiming that she had been disabled since October 2005. (Tr. at 68-71). Her application was denied initially and on reconsideration, and Plaintiff timely requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 7-8, 52-55, 60-67). She personally appeared and testified at a hearing held

---

[1] The following background comes from the transcript of the administrative proceedings, which is designated as "Tr."

1

in June 2008. (Tr. at 503-22). Later that month, the ALJ issued his decision finding Plaintiff not disabled. (Tr. at 12-20). In July 2010, the Appeals Council denied Plaintiff's request for review of the denial of DIB, and the ALJ's decision became the final decision of the Commissioner. (Tr. at 4-6). Plaintiff timely appealed the Commissioner's decision to the United States District Court pursuant to 42 U.S.C. § 405(g).

**B.     Factual History**

    **1.     Age, Education, and Work Experience**

Plaintiff was 55 years old at the time of the administrative hearing and had an eighth-grade education and past relevant work experience as a cashier. (Tr. at 20, 68, 81, 84).

    **2.     Medical Evidence**

Plaintiff suffers from arthritis, mood disorder, anxiety, depression, mild mental retardation, neuropathy (tingling) in her hips and thighs, and thyroid problems. (Tr. at 140, 293-94, 481, 515, 726, 729). At times, Plaintiff has auditory hallucinations in which she hears voices calling her name. (Tr. at 732). Plaintiff believes she developed a split personality after she was raped at the age of 22. (Tr. at 731-32). Plaintiff states that her arthritis, which she has suffered from since her 20s, causes pain in her hands, knees, elbows, and hips. (Tr. at 89, 631, 711, 720, 726).

In December 2005, Plaintiff stated that bending down caused her intense pain, and she could not cross her legs or climb stairs. (Tr. at 89-90). In relation to her personal care, she stated that she had a hard time buttoning her clothes and pulling up her pants, sitting on and getting up from a toilet, getting in and out of the bathtub, and grasping eating utensils. (Tr. at 591). However, as of February 2006, she could walk normally, bend all the way over and get back up,

and squat without difficulty, and she had normal finger movements. (Tr. at 152).

In July 2007, Hall's treating physician, Dr. Sunti Srivathanakul, completed a Residual Functional Capacity (RFC) assessment regarding Plaintiff. (Tr. at 438-41). He concluded that Plaintiff could only sit or stand for 15 minutes at a time without having to change positions. (Tr. at 438). Further, Dr. Srivathanakul opined that Plaintiff could not ever bend, squat, crawl, climb, reach up, stoop, crouch, or kneel. (Tr. at 439). In addition, he noted that her arthritis had physically manifested itself in joint deformity, and that she also had muscle spasms. (Tr. at 439). Last, he noted that Plaintiff suffered from moderate, chronic pain and would likely miss work due to exacerbations of pain. (Tr. at 440).

In addition, Plaintiff has a history of depression and anxiety. (Tr. at 289-90, 599, 628, 631-32, 638, 640-42, 650). In 2008, Hall began going to Metrocare Services ("Metrocare"), a mental health services organization. (Tr. at 479-99.) In February 2008, she was diagnosed with major depression with psychotic features and complained that she did not want to talk to people, could not go outside, and wanted to be alone at home. (Tr. at 495). Plaintiff noted in March 2008, however, that her psychiatric medications were working fine and she just needed refills. (Tr. at 481).

In April 2008, Hall received a psychological examination from Dr. Russell A. Mitchell, Ed.D. (Tr. at 289). Despite the exam being in relation to her mental health, Plaintiff's chief complaint was about her arthritis, but she admitted that she could walk seven blocks to her boyfriend's house. (Tr. at 290-91). Plaintiff stated that she did not understand things, she repeated herself, and she could not stay still. (Tr. at 290). When tested on her mental abilities, however, Plaintiff was able to complete tasks in a timely and appropriate manner, her affect was

normal, her responses to questions were relevant, her train of thought was logical, and her memory and concentration were intact. (Tr. at 291-92). Plaintiff scored within a mild retardation level on the Wechsler Adult Intelligence Scale, but Dr. Mitchell noted that her test scores may have been affected by her tendency to give up quickly when she became flustered, and some exaggeration of her complaints seemed likely. (Tr. at 293-94). In relation to work related activities, Plaintiff demonstrated moderate limitation in her abilities to understand and remember complex instructions, carry out complex instructions, and make judgments on complex work-related decisions. (Tr. at 295). However, Dr. Mitchell opined that Plaintiff had no restrictions in her abilities to remember, understand, and follow simple instructions and make judgments on simple work-related decisions. (Tr. at 295).

In October 2008, Plaintiff was psychologically evaluated by Dr. Cindy Taylor and stated that she was depressed, under a lot of stress, cried, and had insomnia. (Tr. at 731). Further, she talked about her other personality and having auditory hallucinations in which she heard people calling her name. (Tr. at 732). Plaintiff stated that she was unable to work as a cashier, which was her previous job, because of her arthritis and inability to stand for more than 30 minutes. (Tr. at 734). Dr. Taylor believed Hall to have low average to borderline intelligence and opined that Plaintiff may have dissociative identity disorder based on her representation of a split personality, and also may have bipolar disorder, but her symptoms mainly indicated depression. (Tr. at 735-36).

### 3. Hearing Testimony

At the administrative hearing, Plaintiff testified that she could not work because she could not sit or stand for longer than 15 minutes due to pain in her knees and hips, had to prop her feet

up on a chair, had to take breaks every 20 minutes when her hands hurt, and could not lift more than eight pounds because her hands and arms hurt her. (Tr. at 512). She said that she could no longer walk to her boyfriend's house and could not play pool due to her arthritis. (Tr. at 515). Plaintiff stated that she drove herself to the hearing in a borrowed car, but had to pull over three times to walk around because of her knees. (Tr. at 517).

A vocational expert testified that a hypothetical person who could lift 20 pounds occasionally and 10 pounds frequently, sit, stand, or walk for six hours a day, understand and follow instructions, and avoid complex tasks would be able to work as a cashier. However, such a person could not work as a cashier if she was limited to sedentary work, lifting 10 pounds occasionally, had to sit for six hours at a time, could stand or walk for two hours, but could only sit, stand, or walk for 15 minutes at a time, and could not complete an eight-hour workday. (Tr. at 518-19).

### C. The ALJ's Findings

The ALJ analyzed Hall's claim pursuant to the five-step sequential evaluation process for a claim of disability. (Tr. at 12-20). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of disability. (Tr. at 14). At step two, the ALJ found that Plaintiff had the severe impairments of osteoarthritis, depression, and thyroid problems. (Tr. at 14). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the requirements of any listed impairments for presumptive disability under the regulations. (Tr. at 15). Specifically, Plaintiff's mental impairments did not meet the Listings because she had only mild restrictions in her activities of daily living and social functioning and only moderate restrictions with regard to

5

persistence, pace, and concentration. (Tr. at 15). However, the ALJ noted that he had incorporated Plaintiff's mental problems into his RFC determination. (Tr. at 15). Next, the ALJ found that Plaintiff's subjective complaints of pain were not entirely credible. (Tr. at 18). Considering the evidence as a whole, the ALJ found that Plaintiff had the RFC to perform light work as long as it did not involve complex instructions. (Tr. at 15, 19). At step four, the ALJ determined that Plaintiff was capable of performing her past relevant work as a cashier. (Tr. at 19). Therefore, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act at any time from her alleged disability onset date through the date of his decision. (Tr. at 19).

## II. ANALYSIS

A. **Legal Standards**

1. **Standard of Review**

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or no contrary medical findings. *Johnson v. Bowen*, 864 F.2d 340,

6

343-44 (5th Cir. 1988).

The relevant law and regulations governing the determination of disability under the DIB program are identical to those governing the determination of eligibility under the social security supplemental security income program. *Davis v. Heckler*, 759 F.2d 432, 435 n.1 (5th Cir. 1985). Thus, the Court may rely on decisions in both areas, without distinction, in reviewing an ALJ's decision. *Id., passim.*

### 2. Disability Determination

The definition of disability under the Social Security Act is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Pursuant to 20 C.F.R. § 404.1520(d), if a claimant has an impairment which meets the duration requirement and is listed in Appendix 1 or is equal to a listed impairment, the claimant is deemed disabled without consideration of age, education, and work experience.

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past,

> a finding of "not disabled" must be made.
>
> 5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

**B.  Issues for Review**

Although the Court need not address all of the issues in reaching a decision in this case, as will be discussed more fully below, the issues Plaintiff presents are as follows:

1. Did the ALJ err in failing to use the correct severity standard at step 2 of the sequential analysis?

2. Is the ALJ's rejection of Plaintiff's treating doctor's opinion supported by substantial evidence and accompanied by sufficient analysis of the six factors outlined by 20 C.F.R.

§ 404.1527?

  3. Is the ALJ's RFC finding supported by substantial evidence?

Only the first issue is addressed here because, as explained more fully below, remand is required based on the ALJ's failure to apply the proper severity standard at step two of the sequential analysis. Therefore, the Court need not consider Plaintiff's other claims, which relate to alleged errors the ALJ made at subsequent steps in the sequential analysis.

**C.** **Issue One: Did the ALJ err in finding Plaintiff's impairments not severe?**

Plaintiff contends that the ALJ cited to 20 C.F.R. § 404.1521, which states that an impairment is not severe when it has "no more than a minimal effect on an individual's ability to work." (Doc. 25-1 at 11). Plaintiff argues that the ALJ's language does not comply with the standard set forth in *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985), even though the ALJ included a bare citation to *Stone* in his decision. (*Id.*).

The government maintains that the ALJ's decision should be upheld because he cited the applicable regulations, 20 C.F.R. § 404.1520(c) and § 404.1521 in the "Applicable Law" section of his decision, and then cited 20 C.F.R. § 404.1521 again as well as to *Stone* in the "Findings of Fact and Conclusions of Law" section. (Doc. 27 at 5). The government urges that these citations do not indicate that the ALJ applied the improper severity standard because the regulations have been enacted nationwide and have not been overturned or amended by Congress, and the ALJ did cite to *Stone*. (*Id.*).

Plaintiff replies that the ALJ created an ambiguity by citing to *Stone* as well as another standard of severity, so remand is necessary to clarify the actual standard he used. (Doc. 29 at 1).

Pursuant to the Commissioner's regulations, a severe impairment is "any impairment or

9

combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c); *Charlton v. Astrue*, No. 10-CV-0056, 2010 WL 3385002 at *6 (N.D. Tex. July 14, 2010). A literal application of these regulations is inconsistent with the Act, however, because the definition includes fewer conditions than indicated by statute. *See Stone*, 752 F.2d at 1104-05; *Charlton*, 2010 WL 3385002 at *6-7. Therefore, the Fifth Circuit holds that an impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Stone*, 752 F.2d at 1101; *Charlton*, 2010 WL 3385002 at *6-7. The *Stone* standard does not allow for any interference with the claimant's ability to work. *Sweeney v. Astrue*, 2010 WL 6792819 at *5 (N.D. Tex. 2010) (citing *Scroggins v. Astrue*, 598 F. Supp. 2d 800, 805 (N.D. Tex. 2009)).

In *Stone*, the Fifth Circuit held that it would assume that the "ALJ and Appeals Counsel have applied an incorrect legal standard to the severity requirement unless the correct standard is set forth by reference to [the *Stone* opinion] or another of the same effect, or by an express statement that the construction we give to 20 C.F.R § 404.1520(c) is used." *Stone*, 752 F.2d at 1106; *Charlton*, 2010 WL 3385002 at *6-7. Nevertheless, the Court must look beyond the use of "magic words" and determine whether the ALJ applied the correct severity standard. *Charlton*, 2010 WL 3385002 at *6-7 (citation omitted). Unless the correct standard of severity is used, the case must be remanded to the Commissioner for reconsideration. *Stone*, 752 F.2d. at 1106; *Charlton*, 2010 WL 3385002 at *6-7.

Here, when setting out the law in his opinion, the ALJ cited to *Stone* but stated that:

> an impairment or combination of impairments is 'severe' within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is 'not severe' when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work.

(Tr. at 13). This is the standard set forth in 20 C.F.R. §§ 404.1520(c), 416.920(c) that *Stone* found to be inconsistent with the Social Security Act. *Stone*, 752 F.2d at 1104-05; *Charlton*, 2010 WL 3385002 at *6. Even though the ALJ cited to *Stone*, the Court must look beyond the use of "magic words" and here, there is no evidence that the ALJ applied the proper legal standard. Unlike the standard set out by the ALJ, *Stone* does not allow for minimal interference with an individual's ability to work. *Charlton*, 2010 WL 3385002 at *6; *Sweeney*, 2010 WL 6792819 at *5; *Ruby v. Astrue*, No. 3:08-CV-1012, 2009 WL 4858060 at *8 (N.D. Tex. Dec. 14, 2009).

The United States District Court for the Northern District of Texas is consistent in its refusal to find the standard applied in this case is the standard set out in *Stone*. *See Ruby*, 2009 WL 4858060 at *8; *Charlton*, 2010 WL 3385002 at *6-7; *Roberson v. Astrue*, No. 3:10-CV-0240, 2010 WL 3260177 at *9-10 (N.D. Tex. Aug. 17, 2010); *Sanders v. Astrue*, No. 3:07-CV-1827, 2008 WL 4211146 at *7 (N.D. Tex Sept. 12, 2008). The ALJ's standard recognized that a non-severe impairment could have a minimal effect on Plaintiff's ability to work, while *Stone* holds that a non-severe impairment would not be expected to interfere with Plaintiff's ability to work. *Foster v. Astrue*, No. H-08-2843, 2010 WL 1340671 at *12-13 (S.D. Tex. March 30, 2010). Although the United States District Court for the Northern District of Texas has recognized that the difference between the two statements may appear to be slight, the ALJ's

11

construction is not an express statement of the *Stone* standard. *Ruby*, 2009 WL 4858060 at *8.

Generally, appeals from administrative agencies of a procedural error will not lead to a vacated judgment "unless the substantial rights of the parties have been affected." *Roberson*, 2010 WL 3260177 at *10 (citations omitted). However, the ALJ's failure to apply the *Stone* standard is a legal error, not a procedural error. *Id*. The Fifth Circuit has left the lower courts no discretion to determine whether such an error is harmless. *Id*. Rather, in *Stone*, the Fifth Circuit mandated that, "unless the correct standard is used, the claim must be remanded to the Secretary for reconsideration." *Stone*, 752 F.2d at 1006; *Roberson*, 2010 WL 3260177 at *10.

While the ALJ cites to *Stone*, the express recitation of a standard inconsistent with the *Stone* standard creates an ambiguity. This ambiguity regarding whether the correct legal standard was used must be resolved at the administrative level. *Charlton*, 2010 WL 3385002 at *7; *Roberson*, 2010 WL 3260177 at *10. Thus, Fifth Circuit precedent requires that this case be remanded because the ALJ applied an incorrect legal standard of severity at Step 2. *Ruby*, 2009 WL 4858060 at *8; *Charlton*, 2010 WL 3385002 at *6-7; *Roberson*, 2010 WL 3260177 at *9-10; *Foster,* 2010 WL 1340671 at *12-13.

## III. CONCLUSION

For the foregoing reasons, the undersigned **GRANTS** Plaintiff's *Motion for Summary Judgment* (Doc. 25) as set forth herein and **DENIES** Defendant's *Motion for Summary Judgment* (Doc. 26).

**SO ORDERED** on July 8, 2011.

_____
RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE